IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Marcia S. Krieger

Civil Action No. 10-cv-02023-MSK

MICHAEL D. MOEHRING,

    Applicant,

v.

KEVIN MILYARD, Warden, Sterling Correctional Facility, and
JOHN SUTHERS, Attorney General of the State of Colorado,

    Respondents.

ORDER ON AMENDED APPLICATION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254

This matter comes before the Court on the Applicant Michael D. Moehring's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (# 7)[1], which the Respondents answered (# 21). The Applicant did not file a traverse. Having considered the relevant pleadings, along with the pertinent portions of the State Court record (# 24), the Court

    **FINDS** and **CONCLUDES** that:

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 2254 and 1331.

### II. Background

---

[1] Because the Applicant appears *pro se*, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, the Court does not serve as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

1

The Applicant was charged in state court with attempted first degree murder, first degree assault, crime of violence, theft and conspiracy to commit theft.[2] The Colorado Court of Appeals summarized the facts in the Applicant's case as follows:

> The charges resulted from an incident in which defendant, his girlfriend, and another person entered a large discount store to return stolen merchandise. While there, defendant's girlfriend stole an unattended purse from a shopping cart. Store security became involved and apprehended the third person. When the store manager went outside to stop defendant and his girlfriend, defendant pulled out a gun and shot him twice in the abdomen causing serious bodily injury. The crime occurred while defendant was on probation for two felonies and a deferred sentence for a third felony.

*See People v. Moehring*, No. 06CA2058 (Colo. App. Dec. 7, 2007) (unpublished decision) (Pre-Answer Response at Exhibit E, p. 2). On March 31, 2006, the Applicant pled guilty to attempted first degree murder and a crime of violence sentence enhancement.

On May 15, 2006, the Applicant filed a *pro se* motion to withdraw his guilty plea, alleging that his plea was coerced because his attorney allegedly incorrectly advised him regarding the habitual criminal counts. The trial court appointed counsel for the Applicant, and on July 11, 2006, counsel filed a second motion to withdraw the Applicant's guilty plea. The second motion alleged that the plea was not knowing, voluntary and intelligent because the Applicant did not have the chance to review crucial discovery prior to entering the plea.

Following a hearing on August 28, 2006, the state court denied the Applicant's motion to withdraw his guilty plea. The trial court then sentenced him to 38 years in the Colorado

---

[2]This general introductory background is largely taken from the uncontested statement of facts in the Respondents' Answer.

Department of Corrections in addition to 5 years of mandatory parole.

The Applicant filed a direct appeal and the Colorado Court of Appeals affirmed his conviction on December 7, 2007. *See People v. Moehring*, No. 06CA2058 (Colo. App. Dec. 7, 2007) (unpublished decision)  The Applicant filed a petition for writ of certiorari with the Colorado Supreme Court, which was denied on March 24, 2008.

Next, the Applicant filed a state court post-conviction motion challenging the validity of his conviction on February 2, 2009, which the trial court denied on March 25, 2009.  He filed an appeal, and on April 1, 2010, the Colorado Court of Appeals affirmed the trial court's decision. *See People v. Moehring*, No. 09CA1004 (Colo. App. April 1, 2010) (unpublished decision).  The Applicant did not seek certiorari review.

The Applicant commenced this action on August 23, 2010.  Pursuant to Magistrate Judge Boyd N. Boland's order, the Applicant filed an Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 on October 19, 2010.  In the Amended Application, he asserts three claims, alleging that:

> (1) He received ineffective assistance of trial counsel because his attorney did not show him a surveillance tape of the crime scene prior to his guilty plea;
>
> (2) The trial court abused its discretion by denying his motion to withdraw his guilty plea;
>
> (3) The trial court violated the double jeopardy clause by imposing restitution twice.

On November 4, 2010, Magistrate Judge Boyd N. Boland ordered the Respondents to file a pre-answer response limited to addressing the issues of timeliness and/or exhaustion of state

court remedies. The Respondents filed a pre-answer response on November 18, 2010. Respondents asserted that the Amended Application was untimely, and also, that the Applicant failed to exhaust his second and third claims in the state courts. The Applicant filed a Reply on December 8, 2010.

On April 6, 2011, the Court entered an order which rejected the Respondents' argument that the action was untimely, but found that the Applicant had failed to exhaust his second and third claims in the state courts. Therefore, the order dismissed the Applicant's second and third claims as procedurally defaulted. Nonetheless, finding that the Applicant's first claim had been exhausted in the state courts, the Respondents were directed to file an Answer that fully addressed the merits of the claim.

### III. Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the Applicant's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted). The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Because the Application was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review. *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)). Under the AEDPA, a district court may only consider a habeas petition when the Applicant argues that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably

applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full *de novo* review of the Applicant's claims." *Id.*

### IV. Analysis

The Applicant's first claim is the only claim remaining at issue in this action.

**A.     Claim One**

In his first claim, the Applicant asserts that he was provided ineffective assistance of plea counsel. He alleges that he was not permitted to view "critical video evidence" prior to entering his guilty plea and that his attorney "misrepresented the evidenciary [sic] quality of the video evidence". Amended Application at 7. He argues that he "was misled into believing the video evidence clearly identified him as the perpetrator of the crime" but he later discovered that he could not actually be clearly identified in the video. *Id.* Therefore, the Applicant argues that his guilty plea was involuntary because his attorney incorrectly characterized the nature and weight of the evidence against him. *Id.* He contends that "had he known the true character [of the evidence] he would never have accepted the [plea] agreement." *Id.*

In addressing this claim, the Colorado Court of Appeals concluded:

> Here, prior to sentencing, defendant move [sic] to withdraw his plea based on arguments that he entered the plea: without reviewing a surveillance video, which he claimed counsel had erroneously advised him clearly showed his face and identified him as the shooter and was sufficient evidence on which to convict him at trial; without knowing that the restitution amount of $700,000, would be so large; and believing, based on counsel's advice, that if he proceeded to trial and was convicted as a habitual criminal, he would not be eligible for parole and would be required to serve his entire sentence.

> Before denying the motion, the trial court heard testimony from defendant and from two attorneys who represented him prior to and at the time of his plea. The court also heard argument that withdrawal of the plea would cause uncertainty to the victim and substantial prejudice to the prosecution because at least two witnesses had moved out of state.
>
> The court considered the testimony presented and found the attorneys' testimony to be more credible than defendant's with respect to the video and restitution. *See People v. Brazzel*, 18 P.3d 1285, 1288 (Colo. 2001) (trial court weighs evidence and determines credibility of witnesses). The court found counsel had not told defendant his face could be clearly identified on the video, but rather that he could be identified based on other evidence. It found that counsel had told defendant restitution was requested in the $700,000 range and, further, that defendant was aware at the time that he faced "potential restitution in six figures." Further, the court found defendant's assertion that he could be released after serving only forty years of a ninety-six-year habitual criminal sentence was incorrect and noted that all parties agreed that he would be required to serve at least seventy-two years if convicted as a habitual criminal. Under the circumstances, the trial court acted well within its discretion in finding that defendant had failed to establish a fair and just reason to withdraw his guilty plea.

*Moehring*, 06CA2058 at 2-4.

It was clearly established when the Applicant was convicted that a defendant has a right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). To establish that his counsel was ineffective, the Applicant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687-88. In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is the Applicant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* Under the prejudice

prong, the Applicant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If the Applicant fails to satisfy his burden with regard to either prong of the Strickland test, his ineffective assistance of counsel claim must be dismissed. *See id.* at 697.

When a habeas applicant challenges a guilty plea based upon ineffective assistance of counsel, the deficient performance prong of the *Strickland* test requires proof of a lack of reasonably competent advice concerning the plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). An applicant must satisfy the prejudice inquiry by showing that the constitutionally ineffective performance "affected the outcome of the plea process. In other words . . . that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Conclusory allegations without supporting factual averments are insufficient to support a claim of ineffective assistance of counsel. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

The Applicant entered his guilty plea in open court on March 31, 2006. *See* Trial Court Transcript, 3/31/06. The record demonstrates that the Applicant was advised of and indicated his understanding of the trial rights he was waiving by entering the plea. *Id.* at 4-5. The trial court advised the Applicant of the elements of criminal attempt to commit first degree murder and a crime of violence, and the Applicant indicated that he understood the elements of the crime. *Id.* at 5-7. The trial court also advised Applicant of the applicable sentence and mandatory period of parole for a class 2 felony in the aggravated range. *Id.* at 7. The hearing concluded:

> The Court: Are you willing to give all these rights up in return for this

plea agreement?

    The Defendant: Yes, Your Honor.

    The Court: Is anybody forcing you to do this?

    The Defendant: No, Your Honor.

    The Court: Has anybody made any promises about what is happening in this case, other than stated here in court?

    The Defendant: No, sir.

    . . . .

    The Court: Then I can accept your plea, but tell me what you did that makes you guilty of this offense?

    The Defendant: I shot Kevin Farley twice in the stomach.

    . . . .

    The Court: Then having reflected on everything else we've talked about, is it still your desire to enter into this agreement and plead guilty to attempt to commit murder in the first degree with the crime of violence?

    The Defendant: Yes, Your Honor.

    The Court: How do you plead to attempted murder in the first degree?

    The Defendant: Guilty.

    The Court: And the crime of violence?

    The Defendant: Guilty, sir.
    . . . .

    The Court: I'll accept your plea as knowing, intelligent, and voluntary with the advice and assistance of competent counsel, and find that there's a strong factual basis for support the plea.

*See* Trial Court Transcript, 3/31/06 at p. 5, 8, 10-12.

The Tenth Circuit has noted that "[t]his colloquy between a judge and a defendant before accepting a guilty plea is not *pro forma* and without legal significance. Rather, it is an important safeguard that protect defendants from incompetent counsel or misunderstandings." *Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002). Further, "[n]umerous courts have denied relief under §§ 2254 and 2255 to petitioners alleging that their guilty pleas were the product of ineffective assistance, where the plea colloquies have demonstrated otherwise." *Hammons v. Paskiewicz*, 368 Fed. Appx. 904, 907 (Mar. 4, 2010) (unpublished opinion) (citing *Fields*, 277 F.3d at 1214). In this case, it is important to note that the Applicant did not indicate any confusion or hesitation to the trial judge with regard to his guilty plea, and he readily admitted the factual basis for the plea.

A hearing was held on the motion to withdraw the Applicant's guilty plea on August 28, 2006. At the hearing, the Applicant testified to the following regarding the video evidence:

Q: So what exactly did [Ms. McKedy] tell you about these tapes and you?

A: That I was visible. And when I did actually get to see them, that you could tell that she was lying because my new attorney that was given to me said that he couldn't even tell. We blew the pictures up and took them down to where you can minimize them or make them bigger. I do got tattoos, and not even tattoos were visible on that suspect, so - - I don't know why Ms. McKedy would have even thought that was me.

Trial Court Transcript, 8/28/06, p. 8.

Later in the hearing, Applicant's plea attorney, Cynthia McKedy, testified to the

following:

> Q: Okay. Part of this case, or part of the evidence, is that there are videos and DVDs both taken inside of the Wal-Mart and out. Did you show those to your client, Mr. Moehring?
>
> A: I did not.
>
> Q: And why not?
>
> A: He had the written discovery; I discussed what the evidence showed with him, and I did not take [the videos] over.
>
> Q: Did you personally view those items?
>
> A: Yes.
>
> Q: And did you describe to him what was in those items?
>
> A: I described to him what the - - I felt, what I believed, what I saw on those videos, yes.
>
> Q: And do you remember what you said about those videos to him?
>
> A: Talked about the - - what the video showed inside of the store and the shooting out in the parking lot; and along those lines, talking a lot about circumstantial evidence of what happened inside the store, and how it escalated out into the parking lot.
>
> Q: Did you ever tell him that his face could be clearly identified from those videos?
>
> A: No, I did not.
>
> Q: Did you tell him anything about clear identification in those videos?
>
> A: No, I did not. And identification wasn't an issue that we discussed as far as a defense.
>
> Q: Did you believe that this case could be prosecuted - - that a jury could find beyond a reasonable doubt guilt of the defendant even if the Prosecution

>           did not have these DVDs or videotapes?
>
> A:      Yes.
>
> Q:      Why is that?
>
> A:      Based on the nature of the witness statements of what occurred inside of
>         the Wal-Mart, the witness who had kept the suspects in his view, the purse
>         snatching, and how that unfolded throughout the store out into the parking
>         lot.

Trial Court Transcript, 8/28/06, p. 33-34.  Ms. McKedy also testified that she discussed the written plea paperwork with the Applicant prior to his plea, and that the paperwork clearly and accurately set forth the penalties that he would be subject to, including the maximum sentence, mandatory parole, and restitution in the amount of $700,000 or more.  Trial Court Transcript, 8/28/06, p. 38-39.

The trial court evaluated the testimony presented by the Applicant and Ms. McKedy during the hearing, and found the following:

> Given the testimony that I've heard and evaluating the credibility of the witnesses - - first off, Mr. Moehring said that there was an identity issue because his face could not be seen on the videotape or the DVD once he was given access to it.
>
> What Ms. Roy said was that she told Mr. Moehring about the video.  He didn't view it with her because there were technical problems.  She did not tell Mr. Moehring that his face could clearly be seen, but it would be difficult to argue identification based on the clothing and the videos from within the store.
>
> Ms. McKedy stated there was an identification issue she discussed with Mr. Moehring - -  never said that Mr. Moehring's face could clearly be identified on the DVD of the parking lot, but did discuss witnesses and what Mr. Ridenour and what Ms. Micci said during their pleas.
>
> Based on that, Mr. Moehring's argument that he didn't have the

>opportunity to review the videotape, and that, had he been able to review it because he couldn't clearly be identified by his face, doesn't hold any weight with me because he was never told that he could be clearly identified by his facial features. Instead, he was told he could be identified by other facts involved in the case.

Trial Court Transcript, 8/28/06, p. 47-48.

State court factual findings, including credibility findings, are presumed correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *see also Marshall v. Lonberger*, 459 U.S. 422, 431-34 (1983). In the Amended Application, the Applicant provides nothing more than the bare assertion that Ms. McKedy deceived him by telling him that his facial features could be clearly seen in the surveillance videos. However, the issue of whether Ms. McKedy told the Applicant he could be identified based on the video footage has been decisively ruled upon by the trial court. That court had the opportunity to observe Ms. McKedy and the Applicant, hear their testimony and evaluate their credibility. Having done so, the state court found that Ms. McKedy was more credible. Therefore, the state court determined that Ms. McKedy did not inform the Applicant that he could be identified based on the video footage, but that she did discuss other identifying factors in the case, including several eyewitnesses to the shooting. The Applicant has not demonstrated that the factual findings of the state court are clearly and convincingly incorrect. Therefore, this Court must defer to the state court's determination. *See* 28 U.S.C. § 2254(e)(1); *Church v. Sullivan*, 942 F.2d 1501, 1516 (10th Cir. 1991) (finding that a federal court sitting in habeas review must treat a state court's finding regarding witness credibility as a finding of fact entitled to deference).

Further, in *Miller v. Champion*, 262 F.3d 1066, 1074 (10th Cir. 2001), the Tenth Circuit held that in assessing "whether a petitioner would have changed his plea, and therefore whether he was prejudiced," considerable weight is given to the strength of the prosecution's case. As found by the state trial court, the record strongly supports the conclusion that the Applicant would have pled guilty even absent these alleged deficiencies by his counsel. The evidence against him was strong and included: (1) three eyewitnesses that identified him as the shooter; (2) statements by his co-defendants that identified him as the shooter; and (3) identification by the security guard that saw the Applicant at the crime scene. Trial Court Transcript, 8/28/06, p. 20-21. Because the strength of the prosecution's case provides strong circumstantial evidence as to whether a defendant would have changed his plea and was therefore prejudiced, the evidence against the Applicant strongly dictates against a finding of prejudice. *See Miller*, 262 F.3d at 1074.

The Applicant has failed to provide any specific facts to show that counsel misled him or misrepresented the evidence in order to coerce him to plead guilty. S*ee United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir. 1993) (holding that a petitioner's "mere allegation" that he would have insisted on trial but for his counsel's errors is insufficient to entitle him to habeas relief). Therefore, having reviewed the entire record, the Court finds that the Applicant can not establish "a reasonable probability that, but for" counsel's alleged ineffective assistance, "he would not have pleaded guilty and insisted on going to trial." *Hill*, 474 U.S. at 59. Accordingly, the Court finds and concludes that the state court's conclusion was not contrary to, and did not involve a

16

reasonable application of, clearly established federal law and the Applicant is not entitled to relief on this claim.

Accordingly, it is ordered:

1. The Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (# 7) filed by the Applicant Michael D. Moehring is denied.

2. No certificate of appealability will issue because the Applicant has not made a substantial showing of the denial of a constitutional right.

3. This case is dismissed with prejudice.

Dated at Denver, Colorado, on July 21, 2011,

**BY THE COURT:**

_/s/ Marcia S. Krieger_

Marcia S. Krieger
United States District Judge